I would like to reserve three minutes for rebuttal. In this case, the district court had the opportunity to observe the defendant through numerous pretrial hearings all day long, every day for over four weeks during the trial. received a pre-sentence report, and just a moment before sentencing, the defendant stated that we know that the defendant is approximately 17 or 18 years of age at the time of the offense. If the Congress has the maximum sentence that Congress has authorized, if the defendant was 17 at the time of the offense is five years. Now, whose burden is it to show the age of the defendant? Your Honor, this is a basic issue. Jurisdiction is nothing more basic than jurisdiction. I would submit, Your Honor, that clear back in 1932, the U.S. Supreme Court in the McNutt v. General Motors case confirmed the existing rule, which is that when there is an appropriate challenge regarding an issue of jurisdiction, it's the party that is asserting jurisdiction that has the burden of proving the facts of jurisdiction. And that's the rule in civil cases, and it's the rule in criminal cases. Is it the rule in respect to what the age? Is it the rule in respect to the age of the defendant? That's really what's critical here. Who knows better how old the defendant is than the defendant? Well, the defendant is in a position to state something on that. Of course, this particular defendant came from the People's Republic of China. He could tell what he understood to be his true age, and the judge received that testimony. But he was a different age for different purposes in many different proceedings, was he not? That's correct, Your Honor. And, you know, that is not at all unusual for people who are in this country illegally. In fact, it's more common than not that there are numerous ages that get into their A file, which is what happened here, sometimes coming from the person who was in the country illegally, sometimes from confusion, and that's – there's nothing unusual about that. But I would submit, Your Honor, that at the end of the day – and I would say that, jumping forward here, that regarding this case of United States v. the Prosciutto-Samoa case, it indicates that, of course, it's important to try to ascertain the true age as soon as possible to provide the accused person with the benefits of the Federal Juvenile Delinquency Act, if the Court can so ascertain. And that was appropriate, and that should be done. But ultimately, if the government is seeking to punish a person beyond the five years, which is the maximum authorized by Congress, if the person is 17 and has not yet attained their 18th birthday, then the government must prove that the individual has, in fact, attained his 18th birthday. Now, I don't think it's necessary that the district court judge conclude precisely what day the individual was born, but the Court must make a determination of this disputed issue of fact. Well, why has there been a dead letter now? I mean, the district court had an evidentiary hearing, determined that the dependent had the burden of proof on age, found that the dependent didn't carry it, and the Ninth Circuit approved. We approved back in 1998. So that issue, it seems, has been decided. Well, it was – it was – the decision in the original criminal appeal was – had a real infirmity. It was wrong then, and it's wrong today. There was a single case cited in that decision. There were very serious issues that were properly preserved and properly presented, thoroughly briefed at the time of the criminal appeal, and there was a single case cited, which is this U.S. v. Franz Kizil-Samoza case. And that case in no way dealt with a claim that didn't – of – of – that the true age of the individual precluded federal jurisdiction. But, of course, we can't overturn a prior opinion of this panel absent an intervening Supreme Court decision. And I understand that's your argument, but the only thing I saw cited was Justice Thomas's dissent in Booker. Your Honor, I would cite the Court to the Nebius v. Sumner case, a Ninth Circuit case from 1996, 105-3, 453, in the – in the materials. And it states that a motion to recall the mandate must be grounded in a, quote, real infirmity in our previous decision, either when it was entered or when it is viewed in the light of later Supreme Court decisions, end quote. Here, I submit, Your Honor, in this instance, in fact, the – the decision from the Ninth Circuit on the criminal appeal had a real infirmity at the time that it was entered, and that infirmity is even more apparent as a result of the subsequent decisions of the United States Supreme Court, namely the Apprendi case and the Booker cases, which, as – as Your Honor well knows, state that any fact other than a prior conviction which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or jury verdict must be admitted by the defendant for proof to a jury beyond a reasonable doubt. I would say that the issues that were presented in the original appeal were serious issues, and they were ripe for decision at that time, and they remain They include many things, including who is to make this decision. Is it the judge or the jury that's to make this decision on this issue of – genuine issue of material fact? What is the standard to be employed? Is it going to be preponderance of the evidence, clear and convincing, or beyond a reasonable doubt? And those are important issues. They were presented at the time. But, in fact, to dispose of this case, it's not necessary to do all of that, because in this particular case, it's – it's a unique case, and that's why it is properly a case where a recall of the mandate should occur. It's – it's one of a kind, for two reasons, I submit. One, in my 38 years of practicing criminal defense, I've never seen anything like it, a situation where there was a contested issue of fact that was a predicate issue of fact with regard to jurisdiction, and is a necessary fact for purpose of sentencing beyond five years, and the issue was not resolved. It was simply not resolved. The – the district court judge received the initial motion to dismiss for lack of – of jurisdiction and did not accept it as a motion to dismiss for lack of jurisdiction, but treated it instead, Your Honor, as a motion for a request for treatment under the Juvenile Delinquency Act. It is an issue of jurisdiction. That is fundamentally clear in the well-reasoned U.S. v. Seha Prado decision, which, of course, is cited in my brief here. And jurisdiction does not exist ex nihilo. It does – there is no common law of jurisdiction. Jurisdiction must be granted by Congress. In this instance, Congress has stated explicitly, if the individual has not yet attained their 18th birthday, the maximum sentence is five years. And the Seha Prado case reaffirms, it's nothing new, that – that the prerequisites in the Federal Juvenile Delinquency Act are jurisdictional, and – and they must be fulfilled. I submit, as a practical matter, in a case like this, that it's not a case like this if it is to come up from time to time, that the Court should initially try to decide in a pre-trial hearing, you know, is this individual a juvenile or an adult, and do the best they can with the situation at that time, and then they proceed. The district court did that, of course, in this case. Yes. Yes, exactly. I agree with you, Your Honor. And then, though, if you – the issue of fact, a genuine issue of material fact, or, as in the Seha Prado case, it's called a serious question. And then, if that's the situation, I would say under the law as it has evolved with Apprendi and Booker, the case should be – and we requested, you will note, that the case be submitted to the jury and that the jury make the decision on this factual issue. That is where the law is at this time. And that's another reason why recall of manatee is appropriate here, is because this case presaged and anticipated these decisions that were going to be coming from the court. Were you able to come up with any evidence concerning your client's age? Well, we did – I went to the University of Washington to try to get a medical doctor to do a physical exam to assist the Court in that regard. We requested permission to take depositions of the defendant's family members in the People's Republic of China or, in the alternative, to offer telephone testimony from the people with that kind of knowledge in China. Those requests were denied, Your Honor. At the end of the day, I'm sorry. No birth records in China? Pardon me? No birth records in China? Well, there are – there are birth records, and there are the – the – the personal knowledge of the individuals who were present at the time this individual was born. But in any event, that was denied. We went all the way through. And at the end of the day, we had the judge standing there and making this declaration. And I was there. And, you know, what was so impressive to me was that this was a judge who had recognized from the beginning there was a genuine issue of fact here, and had observed this passive young person in his courtroom for weeks and weeks, day after day, and the judge's statement stands clear as a bell. He had his – his one and only statement regarding the resolution of this factual issue is that we know the defendant was approximately 17 or 18 at the time. This is – jurisdiction is as basic as it gets, and – and – and this matter was front and center from the beginning to the end of this process. And then it was fully developed and presented. And I don't – I can't offer the explanation, but the reality is, I submit, that the original appellate decision in the criminal appeal was – had a real infirmity. It was – it did not address these important issues, which were later addressed in Apprendi and Booker and so on. And – and it – it cited a single case in – in the – that is, the U.S. v. Froskio-Samoza. And – and I submit to Your Honors that that case has in no way concerned the proper disposition of a claim that the And lo and behold, this – this Court, in the later decision of U.S. v. Ceja Prada, explicitly states that very thing, which is that one single case that was cited before in no way concerned the proper disposition of a claim that the defendant's true age was 17 or 18. If he – if he were a juvenile, you'd think the – his defense counsel would have brought that up early on. Would have – I'm sorry, Your Honor, again? Would have brought that fact up early on. I was that counsel, and I did. I – I – I brought this fact up from the beginning all the way through, and brought it up – we – we sought a re-hearing in the original appeal. We – we filed a – a petition for registration. I know you did, because I – I – I remember you got up and said, only take a minute, Your Honor, and then you went on for a bunch of pages. I'm sorry, Your Honor? I said, I remember in the transcript where you told the judge, let's only take a minute, and then you went on for pages and pages. I'm doing it again? Is that what you're telling me? You are. You owe us 3 minutes and 55 seconds. Well. We'll collect it the next time. Your time is up. All right. I take that directly. Thank you. You've – you've aged while you're here. Okay. Good morning, Your Honors. May it please the Court, my name is Helen Bruner. I'm here to represent the United States. Let me jump directly to the motion to recall the mandate. Counsel asserts that there was error in this Court's decision in 1998. And I would submit to you that there was not error. What this case is about is a case where the defendant fully had the opportunity to litigate the question of his age before the district court as part of a motion to dismiss the indictment. The district court considered both his testimony and evidence presented by both the defendant and the government. And the evidence included no less than, I believe, six different dates of birth that this defendant had given to various law enforcement officers over the course of two years. There were, in his A file, at his exclusion hearing in 1993, and in a sworn statement provided in 1993, he claimed to be 17. That would have meant he would have been 19 years old at a minimum at the time of these declarations filed with INS in 1994 pertaining to his immigration status, two separate declarations. He claimed, again, to be 17. And so, well, at that point, he would have been at least 18 years old because those declarations were filed in April of 1994. He told officers in California when arrested in December of 1994 that his birth date was January 10th, 1977, which, again, would have made him over the age of 18. And when he was arrested in connection with this offense, he provided no less than three different birth dates at various times to include September 18, September 8, 1977, and then November 21st, and then, ultimately, the notorial certificate that was in the A file of the district court. So it is with that record and with that the district court concluded that he could be properly tried as an adult and that the indictment should not be dismissed. And I would call the Court's attention to Fresquilla-Samosa because that case is on point on one particular issue. That case clearly does not address the issue here. That is to say, it addressed the question of whether or not age was, in fact, an element of the juvenile delinquency proceeding. But it does very clearly say that age is something that's uniquely within the individual's ability to prove. And what we have here is an individual who provided multiple dates as it suited him and continually provided dates that would have established at the time that he was interacting with law enforcement that he was a minor. It's odd that the Court didn't just find that he was whatever age he is. We know he's over 18. Well, I think perhaps the Court didn't want to try and guess which one of the various dates or ascribe a date, but it's clear that the Court felt that it had jurisdiction to proceed. And, in fact, I would also call attention to this Court to the opinion, the unpublished opinion in this case affirming the district court here actually says, and it concludes, the district court properly denied Jang's motion to dismiss for lack of jurisdiction. So this issue was fully and completely briefed in the district court, argued in the district court, argued on appeal, and briefed on appeal. No finding was made. No finding was made, Your Honor, but I would submit to the Court that I think it would be difficult under those circumstances for the district court to be asked to make a specific finding as to his true birth date. And I would draw the Court's attention to Stamoporado. Well, that's what you get paid to do. Well, I guess, Your Honor, when someone is presented with an individual who's provided, I think by my count, six or seven different birth dates, it's a little difficult for the Court to say it's definitively this birth date. But what he did say in the context of the decision denying the motion to dismiss is that, in fact, he was an adult. I mean, that's by implication the nature of this decision. Sahoprado, I would point out, is really distinguishable both on the facts and on what happened. In Sahoprado, the defendant had pleaded guilty, asserted he was 21 years old at the time of his guilty plea, and then only at the time of filing the briefs on appeal for the first time raised the question of whether or not he was truly a minor and submitted as a part of a motion to remand to the district court documents asserting that he was a minor to include affidavits from family members and a birth certificate from Mexico certified by the consulate. I'm well familiar with this case because I was appellate counsel on that case. And the case was remanded to the district court for an evidentiary hearing on the question of whether or not his birthday was the birth date that he originally gave at the time of his arrest or the birth date that he submitted to.  Well, Your Honor, I'm not sure that I'm uniquely qualified to answer that, but having handled some cases involving questions in the child pornography area, I know that they look to the types of physical development. I don't think that's an absolute exact science as to when what someone's birth date is, absent someone being present at the time of the birth and recording that. Is it kind of like looking at a horse to see how long its teeth are? Well, I suppose that's a good analogy. You know, it reminds me of a story I heard about a person, a guy that said he could tell his age by the number of rings around the bathtub. Just think about that for a while. In any event, Your Honor, I think this matter was fully briefed, and I think this defendant has received more than consideration on this issue, and there's no reason to recall the mandate. With respect to the certified issue, I think that's also fully briefed, and unless the Court has any questions for me, I would ask that this Court affirm the order of the district court. All right. Thank you. All right. You only got the old area. Well, I'll say that this individual did not speak a word of English at the time of the trial. And it's not at all unusual to have. I'm going to give you a second for each. Pardon me, Your Honor. How old are you? Me? Yeah. I'm 63. You got one minute and three seconds. All right. And I'll say that the judge should have and did not resolve the issue of fact. That's what the holding is in the Seahawk Grotto. And, in fact, the closest the judge came to it was explicitly finding that he was approximately 17 or 18. It's basic black and white. Congress, the maximum sentence authorized was five years if he was, in fact, 17. It's nothing more than an assumption that he was older than 17. It wasn't necessary for the Court to conclude precisely what day he was born. The Court simply had to make a finding of fact that he had attained his 18th birthday. However many days he was beyond his 18th birthday was of no consequence. The issue is whether he was 18 or not. You told us that already. I'm repeating myself. This is an issue that's difficult to decide these questions, but they have to be decided. And we've got the recent decision of the United States Supreme Court saying you can't kill someone if they've committed a defense prior to their 18th birthday. So this matter is going to come up again in a different context. Here, this young person who was very pale and passive should be sent back to his homeland in China. Thank you, Your Honor. Thank you. Our matter is submitted.
judges: B. Fletcher, Pregerson, Ikuta